(No. 2201. Dec. 30, 1918.)
CONTINENTAL OIL CO. v. CITY OF SANTA FE.

### SYLLABUS BY THE COURT.

1. A preamble is a prefatory statement or explanation or a finding of facts by the power making it, purporting to state the purpose, reason, or occasion for making the law to which it is prefixed. Although not an essential part of an act or ordinance, reference thereto may be had in aid of the interpretation of the act or ordinance of which it is a part.    P. 97

2. Where it appears from the context of an act or ordinance that words have been omitted therefrom, the same may be supplied by judicial construction, to complete the sense and express the legislative will. If no judicial certainty, however, can be settled upon as to its meaning, after resorting to every authorized means of construction, the court will not complete or make certain an act or ordinance otherwise incomplete and uncertain.                                      · P. 98

3. Municipal ordinances are construed by the same rules as statutes of the Legislature.                            P. 101

Appeal from District Court, Santa Fe County; Leahy, Judge.

Suit by the Continental Oil Company against the City of Santa Fe. From a judgment dismissing the complaint plaintiff appeals. Reversed, with instruction to enter judgment granting the relief prayed for.

FRANK J. LAVAN, of Santa Fe (Catron & Catron, of Santa Fe, of counsel), for appellant.

A. B. RENEHAN, of Santa Fe, amicus curiæ.

J. J. KENNEY, City Atty., and E. P. DAVIES, both of Santa Fe (N. D. MEYER, of Estancia, of counsel), for appellee.

OPINION OF THE COURT.

PARKER, J. This is an appeal by the Continental Oil Company from a judgment rendered in the district court of Santa Fe county, dismissing a complaint filed by it against the city of Santa Fe.

The suit was instituted by the appellant for the purpose of enjoining and restraining the enforcement of a certain ordinance of said city under which the latter claimed the right to compel the appellant and others to discontinue the storage of petroleum and its products in said city.

The appellant is now, and for many years last past has been, engaged in the business of storing, distributing, and selling petroleum and its products in said city, and in prosecuting its business in those respects it has maintained and used warehouses, tanks, and other instrumentalities within said city. In pursuance of a contract made in 1904 between the appellant and the city, the former, upon premises owned by it adjacent to a line of railway in said city, erected a warehouse constructed of brick, with stone foundation and metal roof and doors, at a

cost to it of about $2,500. There is also situate upon said property three metal tanks, of the total capacity of 18,000 gallons, which are used in the prosecution of its said business.

On January 3, 1917, the appellee ordained the following ordinance (the marginal numericals being inserted by us for convenience) :

"An Ordinance Regulating the Handling, Storage, Etc., of Petroleum, Gasoline, Etc., in the City of Santa Fe.

"Be it ordained by the city council of the city of Santa Fe:

"That whereas, the use and maintenance of storage warehouses and depots for the storage, selling, handling, and distributing of petroleum or kerosene (commonly called coal (1) oil), gasoline, and any and all kinds of oil used for fuel, power, or illuminating purposes, inside of the city limits of the city of Santa Fe, is highly dangerous to the lives and property of the citizens of the city of Santa Fe, and constitutes a nuisance:

"Therefore it is hereby ordained: That any person, firm, company, or corporation who shall so keep, use, conduct, (2) or maintain a warehouse or warehouses, storage depot, or place inside of the city limits of the city of Santa Fe wherein petroleum or kerosene (commonly called coal oil), gasoline, or any other kind of oil, used for or suitable for fuel, power, or illuminating purposes, in quantities of more than one barrel, shall be guilty of a misdemeanor, and upon conviction shall be fined not less that $25.00 nor more than $50.00 or imprisonment for not less than 10 nor more than 30 days, and for the purpose of this ordinance (each day) that said warehouses, storage depots, or places where such oils, in (3) quantities of more than one barrel, are kept shall constitute a separate offense.

"The Continental Oil Company, and any other persons, firms, companies, and corporations, so running, operating, maintaining, or conducting such warehouses, storage (4) depots, or places where such petroleum or kerosene, gasoline, and other kinds of oil used for fuel, power, or illuminating purposes, within the city limits of said city of Santa Fe, in quantities exceeding one barrel, are hereby ordered and required to remove its or their said warehouses, storage depots, or places beyond the city limits of the city of Santa Fe within ten days from the service upon it or them of a copy of this ordinance."

Counsel for appellant, appellee, and the amicus curiæ have filed able and exhaustive briefs in this cause. Many

of the propositions presented involve matters of great importance and without precedent in this jurisdiction. For instance, the following, among other propositions, are presented: That the contract of 1904 was a measure for the regulation of the business of the appellant, and did not constitute bartering away the police power of the city; that the city was without power to summarily declare the business of the appellant a nuisance, and its declaration to that extent does not constitute an adjudication of the fact; that courts may review the reasonableness of ordinances of a municipality passed under the police power and declare them void because of the nature of their provisions; and that the ordinance is not general in its nature and impartial in its operation. Not only are these specific propositions raised, but the case involves a discussion of many of the ramifications of each of these questions. We are also asked to comprehensively define, in particular respect to the parties affected, the limits beyond which a municipality may not go in the pretended exercise of the so-called police power. Each and every one of these propositions ought to be determined in this jurisdiction for the future guidance of the officers of the municipalities of this state; but a discussion of them would necessarily be premised upon the assumption that some definite and ascertained meaning may be and is attached to the ordinance involved herein, whereas, as we shall hereafter demonstrate, the ordinance is indefinite and unintelligible. So uncertain is its terms that no fixed meaning can be ascribed thereto. Consequently we cannot determine many of the propositions submitted, but are constrained to determine the appeal upon purely formal matters, viz., matters pertinent to the construction of the ordinance.

The title of the ordinance purports to advise that the ordinance was to regulate the handling, storage, etc., of petroleum, gasoline, etc. The main subject of the title is petroleum, etc., not warehouses.

[1] The matter opposite marginal numeral 1, the same being paragraph 1 of the ordinance, is introduc-

tory to, and explanatory of, the reasons for passing the ordinance, and constitutes the preamble, a wholly unnecessary part of an ordinance. Townsend v. State, 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 300, 62 Am. St. Rep. 477; Fenner v. Luzerne County, 167 Pa. 632, 31 Atl. 862; Coverdale v. Edwards, 155 Ind. 374, 58 N. E. 495; Lloyd v. Urison, 2 N. J. Law, 285; James v. Du Bois, 16 N. J. L. 285; Silva v. Newport, 119 Ky 587, 84 S. W. 741; Hanly v. Sims, 175 Ind. 345, 93 N. E. 228, 94 N. E. 401. In the latter case it was said that a preamble is a prefatory statement or explanation or a finding of facts by the power making it, purporting to state the purpose, reason, or occasion for making the law to which it is prefixed.

It is utilized as an aid to the interpretation of the act to which it is prefixed, for the purpose of clarifying, or to assist in clarifying, ambiguities. Its office is to expound powers conferred, not substantially to create them. 2 Lewis-Sutherland Stat. Const. (2d Ed.) § 341. The subject is fully discussed in the last-mentioned work. The ordinance in question not being ambiguous, but so uncertain as to fail to prescribe a rule of conduct, the preamble performs no important function herein.

The matter opposite marginal numeral 2, being the second paragraph of the ordinance, is incomplete and inconclusive in expression, and fails to prescribe a rule of conduct. The expression of the thought, purpose, and object of the ordinance is omitted therein. The first part of the paragraph, omitting superfluous words, is to be read substantially as follows:

Any person who shall so keep a place in said city where petroleum, in quantities of more than one barrel (?), shall be fined or imprisoned.

In the words of counsel for appellant:

"What? What about the petroleum, etc., in quantities of more than one barrel? Are manufactured? Are refined? Are distilled?"

[2]    Certainly the paragraph remains in an unfinished

Continental Oil Co. v. Santa Fe, 25 N. M. 94.

state, and lacking a predicate, no rule of conduct is thereby prescribed, and consequently the sense of the paragraph is left wholly to speculation. The entire ordinance is so inconsistently phrased that we can only conjecture as to what the power ordaining it intended to accomplish thereby.

The matter opposite marginal numeral 3, being the latter part of paragraph 2 of the ordinance, is radically imperfect. It is not an imperfection which may be cured by judicially inserting, by construction, words plainly omitted by reference to the context, but represents an unintelligible sentence. Reference to it (quoted above) will disclose that it is to be read thus, when superfluous matter is eliminated therefrom:

. Each day that said places, shall constitute a separate offense.

Obviously the sentence is incomplete, and what was intended by the power ordaining it is again a matter of pure speculation. These are not nice and refined observations upon diction or phraseology, but substantial errors in the preparation and ordaining of the ordinance.

The matter opposite marginal numeral 4 is akin to that opposite marginal numeral 2, in that it was evidently patterned upon it, and fails to contain a predicate to the subject of the topic sentence.

In the exercise of their function of interpreting and construing acts of the legislative branch of the government, courts, in the exercise of common sense and judgment, will not permit an act to be declared invalid for uncertainty or vagueness where reason demands that words be inserted therein. This rule is founded upon the premise, however, that the intent of the lawmaking power is so expressed in the act involved that from its context the meaning thereof is ascertainable. The rule is well stated in 36 Cyc. 1127, as follows:

"Where it appears from the context that certain words have been inadvertently omitted from a statute, the court may sup-

ply such words as are necessary to complete the sense and to express the legislative intent. But in the application of this rule the court should exercise great care to keep within the province of construction, and not to trespass upon that of legislation."

The rule is also referred to at page 1113 in the same volume and work, where it is said:

"Where a statute is incomplete or defective, whether as a result of inadvertence or because the case in question was not foreseen or contemplated, it is beyond the province of the courts to supply the omission, even though as a result the statute is a nullity.  *  *  *"

In 2 Lewis' Sutherland Stat. Const. (2d Ed.) it is said:

"Legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors, or omissions, provided the intention of the Legislature can be collected from the whole statute, and the title and preamble may be referred to for this purpose."   Sec. 410.

"To enable the court to insert in a statute omitted words or read it in different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute.   When the descriptive words constitute the very essence of the act, unless the description is so clear and accurate as to refer to the particular subject intended, and be incapable of being applied to any other, the mistake is fatal."   Sec. 411.

In the discussion of this proposition the doctrine is also mentioned that to constitute an enforceable act the statute or ordinance must prescribe a rule of action and unless it does do so it is void for uncertainty.   A case where the court says all that may be necessary to say concerning the matter is that of State ex rel. Crow, Attorney General, v. West Side St. Ry. Co., 146 Mo. 155, 47 S. W. 959. where it is said:

"Recurring to the point first suggested, this question is presented:   Does the act sufficiently express the legislative will enable the courts and officers charged with its execution to ascertain and enforce it?   A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.   Mere difficulty in ascertaining its meaning, of the fact that it is susceptible of different interpretations, will not render it nugatory.   Doubts as to its construction will not justify us in disregarding it.   It is the bounden duty of the courts to endeavor, by every rule of

construction, to ascertain the meaning of, and to give full force and effect to, every enactment of the General Assembly not obnoxious to constitutional prohibitions. It is equally true that a mere collection of words cannot constitute a law; otherwise the dictionary can be transformed into a statute by the proper legislative formula. An act of the Legislature, to be enforceable as a law, must prescribe a rule of action, and such rule must be intelligibly expressed. 'It is plainly the duty of the court to construe a statute ambiguous in its meaning so as to give effect to the legislative intent, if this be practicable. * * * But a statute must be capable of construction and interpretation; otherwise it will be inoperative and void. The court must use every authorized means to ascertain and give it an intelligible meaning; but if, after such effort it is found to be impossible to solve the doubt and dissolve the obscurity, if no judicial certainty can be settled upon as to the meaning, the court is not at liberty to supply or make one. The court may not allow conjectural interpretation to usurp the place of judicial exposition. There must be a competent and efficient expression of the legislative will' (citing cases). * * * It is needless to cite authorities to show that which is self-evident. It is manifest that an act of the legislative department cannot be enforced when its meaning cannot be determined by any known rules of construction. The courts cannot venture upon the dangerous path of judicial legislation to supply omissions or remedy defects in matters committed to a co-ordinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers."

[**3**] Municipal ordinances are construed by the same rules as statutes of the Legislature. 28 Cyc. 388.

The application of the foregoing rules manifestly makes it necessary to hold that the ordinance in question is so vague and uncertain that it fails to prescribe a rule of action. We may only surmise what the power ordaining the ordinance intended. The ordinance as it stands is wholly inoperative, and, if it is to be corrected, the power that ordained it must make the correction. We are not justified in completing the ordinance under the guise of judicial construction. For the reasons stated the judgment of the trial court will be reversed, with instructions to enter judgment granting the relief prayed for in the complaint; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.