## NOLAND CO., Inc., v. CHELSEA HOUSING CORPORATION.

No. 7882.

Circuit Court of Appeals, Third Circuit.

Argued March 20, 1942.

Decided June 8, 1942.

---

[6] The date on which judgment was entered in action No. 943.

J.S.A. 2:60–105 et seq. The contractor entered into a contract in writing with Irving J. Gluck, Inc., the subcontractor, to furnish and install the complete plumbing, heating and drainage system for the building project. The subcontractor purchased from the plaintiff, Noland Company, Inc., plumbing and heating materials having a stipulated value of $34,468.10. On December 6, 1939 the subcontractor failed to meet its weekly payroll and on December 14th it wrote the contractor requesting the latter to meet the payroll and authorizing it to deduct amounts so paid from the moneys due the subcontractor. The contractor did so. It completed the work at a cost at least equal to the sum which it owed the subcontractor. In completing the work the contractor used all the materials supplied by the plaintiff. After the subcontractor failed to comply with the plaintiff's demand for payment the latter filed its stop notice in accordance with the New Jersey Mechanics' Lien Law, N.J.S.A. 2:60–116 and served copies of the notice upon the owner and contractor. Despite the notice the owner paid the contractor the entire balance of $319,018.84 still owing on the contract between them. The plaintiff recovered a default judgment against the subcontractor and then instituted suit against the owner in the District Court for the District of New Jersey. It recovered judgment for $34,468.10 with interest. This appeal by the owner followed.

The appeal presents the question whether one who has supplied materials to a subcontractor for a building project and has filed and served a stop notice in compliance with the New Jersey Mechanics' Lien Law is entitled under that law to priority of payment out of moneys due the contractor by the owner upon the principal contract even though the contractor is not indebted to the subcontractor. In deciding this question we must apply the statute as it has been construed by the New Jersey courts even though, if we were to give independent consideration to its meaning, we might reach a different result. The provisions of the Mechanics' Lien Law which are involved are Sections 2:60–116 and 117, N.J.S.A. 2:60–116, 117. Their text is set out in a footnote.[1] The effect

Thomas H. Munyan, of Atlantic City, N. J., for appellant.

I. Herbert Levy, of Trenton, N. J. (Hinton & Heron, of Washington, D. C., on the brief), for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

Chelsea Housing Corporation, as owner, entered into a contract in New Jersey with Anthony P. Miller, Inc., as contractor, for the construction of a housing project in Atlantic City, New Jersey. The construction contract specifications were duly filed in the office of the county clerk of Atlantic County as prescribed by the Mechanics' Lien Law of New Jersey, N.

[1] "2:60–116. Notice of refusal to pay claim filed by materialman, journeyman, etc.

"When any master workman or contractor or any contractor under any master workman or contractor refuses, upon demand, to pay any person who has furnished him materials for use in or about the erection, construction, completion, alteration or repair of any such

of these *statutory provisions* in a situation such as the one now before us has been twice before the New Jersey courts. In each of these cases the dispute was between the contractor and a materialman of a subcontractor as to moneys due the contractor by the owner but which the owner had deposited in the registry of the court because of the question raised by the filing of the stop notice by the materialman. In each case the contractor completed the work of the subcontractor at a cost in excess of the sum owing under the subcontract.

In the earlier case, Morris County Golf Club v. Hegeman-Harris Co., N.J.Ch.1923, 121 A. 528, the Court of Chancery held that under the statutory provisions to which we have referred the contractor was entitled to the fund payable by the owner as against the unpaid materialman of the subcontractor. The decision was affirmed by the Court of Errors and Appeals, sub nom. George A. Mills Co. v. Hegeman-Harris Co., 94 N.J.Eq. 802, 122 A. 926, 125 A. 127, upon the opinion of the Court of Chancery. It squarely rules the question now before us and would end the discussion except for a case decided ten years later, St. Michael's Orphan Asylum and Industrial School of Hopewell v. Conneen Constr. Co., 1933, 114 N.J.Eq. 276, 166 A. 458, affirmed upon the opinion below 115 N.J.Eq. 334, 170 A. 649, upon which the plaintiff relies as authority in support of its judgment.

 The plaintiff's first contention is that the Conneen case has in effect overruled the decision in the Hegeman-Harris case. Our examination of the Conneen opinion, however, convinces us that this contention cannot be sustained. The opinion in the case was written by a vice chancellor. Obviously it was not within his competence to overrule the prior decision of his court in the Hegeman-Harris case since that decision had been affirmed by the Court of Errors and Appeals. While he expressed disagreement with the construction placed upon the statute by the Hegeman-Harris case he recognized the binding force of that decision but concluded that it was inapplicable to the situation before him because of a difference in the facts which he emphasized as significant and of such weight as to require a different ruling. The distinction upon which he relied was that in the Conneen case title to the materials involved was by the provisions of the subcontract intended to pass and did actually pass to the contractor upon their delivery at the site of the work. This fact, which was not present in the Hegeman-Harris case, does raise a valid distinction for, as the Vice Chancellor said (114 N.J.Eq. page 281, 166 A. page 460): "It is unthinkable that a contractor, who is liable for the performance of his contract with the owner in a case where by his contract with the subcontractor he assumes title to all the property and materials delivered on the job, can avoid payment for these materials because he expends more money in the completion of the subcontractor's contract than the balance due under that contract." It may be that the Vice Chancellor stressed this difference in facts because he was anxious to avoid giving effect to the construction of the statute by the Hegeman-Harris case which he considered unsound but which he was without power to overrule. The Court of Errors and Appeals, however, when the Conneen case came to it on appeal, did not take the plainly proffered opportunity to overrule the Hegeman-Harris decision. Instead it affirmed

---

house or other building mentioned in section 2:60–115 of this title, or any addition thereto, or to pay any subcontractor, journeyman or laborer employed by him in erecting, constructing, completing, altering or repairing any building or any addition thereto the money or wages due him, the materialman, journeyman, laborer or subconstractor [subcontractor] shall file with the proper county clerk, a written notice of the refusal and the amount due and demanded, specifying the amount as nearly as possible."

"2:60–117. Retention by owner of amount due; notice by owner; notice by claimant upon owner.

"After such notice is filed pursuant to section 2:60–116 of this title, the owner of such building shall thereupon be authorized to retain the amount so due and claimed by such materialman, journeyman, laborer or subcontractor out of the amount owing by him on the contract or that may thereafter become due from him on such contract for labor performed or materials furnished in the erection of such building, giving the master workman or contractor and any contractor under any master workman or contractor written notice of such notice and demand.

"The claimant may, after filing such notice mentioned in said section 2:60–116, serve a copy of such notice upon the owner of the building."

the decision of the Court of Chancery [115 N.J.Eq. 334, 170 A. 652] "for the reasons expressed in the opinion delivered by Vice Chancellor Davis," which, as we have seen, expressly distinguished the two cases. We must, therefore, accept the decision in Hegeman-Harris as still expressing the law of New Jersey and apply it, unless we find present in this case the distinguishing fact which was present in the Conneen case, namely that title to the materials furnished by the plaintiff was intended to and did pass to the contractor.

It is the second contention of the plaintiff that the present case is ruled by the Conneen case and not by Hegeman-Harris because the distinguishing feature of the Conneen case, transfer of title to the materials, is in fact present here. In support of this contention it relies upon several clauses in the subcontract and one in the principal contract. Article XIII of the subcontract provides that the contractor must pay to the subcontractor each month 90% "of the value of work performed and material delivered" by the subcontractor; Article IX that "Subcontractor agrees, however, not to remove any material from the project site without permission of the Contractor," and Article VII that "Contractor agrees, without cost to Sub-contractor, to keep all work done by Subcontractor at the project site which constitutes a part of the permanent construction and all materials intended to form a permanent part of the building delivered to the project site insured in the name of the Owner and/or Contractor against damage by fire or tornado." Article 29 of the General Conditions of the contract between the owner and the contractor, incorporated into the subcontract by reference, requires the owner to maintain fire insurance "upon the entire structure upon which the work of this contract is to be done * * * including items of labor and material connected therewith whether in or adjacent to the structure insured, materials placed or to be used as part of the permanent construction." The contractor has the right to be named jointly with the owner in the fire insurance policies.

■ In our opinion these clauses, whether taken singly or in combination, do not support a conclusion that title passed.[2] No conclusion may be drawn as to title from the fact that the contractor carried insurance upon the materials. The loss or destruction of the materials might hamper the completion of the building project with resultant financial loss to the contractor. This factor is sufficient to give the contractor an insurable interest in the materials, even though it had no title, legal or equitable, therein.[3] Moreover, the provision as to insurance should be read in relation to the preceding sentence of Clause VII which provides "Sub-Contractor agrees, at his own expense, to carefully protect, watch over and care for all his work, completed and otherwise, and all his materials, supplies, tools and equipment at or near the project, to make good any loss or damage resulting from theft, wind, water, acts of Providence or other causes until the final completion and acceptance of the entire project * * *." It is apparent that the parties were concerned with the completed job, materials as well as work, and that the subcontractor was not relieved of the responsibility for either until the work was completed and accepted.

The provision in clause IX prohibiting the removal by the subcontractor of materials from the building site must be read in relation to the remainder of the clause. It will then be seen that the clause deals with the situation where defective materials are supplied and details the resulting rights of the contractor and obligations of the subcontractor. It does not bear upon the determination of title to the materials. Nor may the passage of title be inferred from the fact that the rate of pay to the subcontractor is to some extent measured by the materials supplied to the building project. The subcontractor was to be

---

[2] Compare Jacobi v. Board of Education of Morristown, 1920, 94 N.J.L. 187, 109 A. 345, where the Court of Errors and Appeals ruled as a matter of law that the fact that a subcontractor delivered materials upon the site of a building project and charged the entire contract price to the contractor on his books of account was insufficient to support an inference that title passed to the contractor.

[3] "It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." Mr. Justice Gray in Harrison v. Fortlage, 1896, 161 U.S. 57, 65, 16 S.Ct. 488, 490, 40 L. Ed. 616.

paid for work completed and materials supplied at a rate which would enable it to meet bills for payroll and materials purchased. The payments, however, were based upon the completed job.

We conclude that there is no evidence in this case to support a finding that title to the materials passed and the attempt to bring this case within the decision in the Conneen case must, therefore, fall. Accordingly it must be held that the case is ruled by the Hegeman-Harris decision under which the contractor was entitled to the funds in the hands of the owner.

The judgment of the district court is reversed.