384 P.2d 691

Alexander C. CORONDONI and Martha Corondoni, his wife, Sylvester H. Lucas and Clara Mae Lucas; his wife, Leonard Bell, Administrator of the Estate of Mildred B. Michelson, Petitioners-Appellees,

v.

The CITY OF ALBUQUERQUE, a municipal corporation, and the City Commission of the City of Albuquerque and its members, Maurice Sanchez, Richard A. Bice, W. W. Atkinson, Clarence B. Davis and James M. O'Toole, Respondents-Appellants.

No. 7250.

Supreme Court of New Mexico.

Aug. 19, 1963.

Frank L. Horan, James L. Parmelee, Jr., Charles N. Glass, Leland A. Stone, Albuquerque, for appellants.

Gino J. Matteucci, Peter V. Domenici, Albuquerque, for appellees.

CARMODY, Justice.

The city of Albuquerque and its city commission appeal from a judgment entered by the district court pursuant to a hearing on a writ of certiorari filed by appellees. The contention here, as in the trial court, is that the court was without jurisdiction to review a denial of appellees' request for re-zoning.

Appellees, in February, 1960, petitioned the city planning commission for a zone change from "historical" to "commercial," alleging that the property had been zoned "commercial" prior to enactment of the Historic Old Town zoning ordinance by the city commission in 1957.

The planning commission denied the request, and appellees appealed to the city commission, under the procedure established by ordinance, to question the propriety of the denial. On that appeal, the request was again denied. Appellees then filed a petition for writ of certiorari with the district court, under § 14–28–16, N.M. S.A.1953, 1961 Supp., for review of the city commission's refusal to re-zone. Upon hearing, the district court found as a fact that an appeal had been taken to the city commission and there denied; and concluded that the zoning ordinance was unconstitutional as to petitioners, in that it was unreasonable, arbitrary and confiscatory. Judgment was entered deleting appellees' property from the Historic Old Town Zone.

There are two sections of our statute which must be considered, the relevant portions being as follows:

"14–28–15. Appeals to governing body—Grounds—Granting special exceptions—Majority required for reversal or exception—Right of appeal—Stay of proceedings—Procedure.— Such local legislative or governing body shall have the power to sit for the hearing and decision of appeals, where it is alleged that there is error in any order, requirement, decision or determination by any administrative official, commission or committee, in the enforcement of this act (14–28–9 to 14–28–18) or any ordinance, resolution, rule or regulation adopted pursuant to the same; shall have the power to authorize, in appropriate cases and subject to appropriate conditions and safeguards, special exceptions to the terms of the zoning ordinance or resolution such as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the zoning ordinance or resolution will result in unnecessary hardship, and so that the spirit of said ordinance or resolution shall be observed and substantial justice done; and in exercising the above-mentioned powers, such legislative or governing body may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify, the order, requirement, decision or determination appealed from, and may take [make] such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer, commission or committee from which the appeal was taken. Provided, the concurring vote of two-thirds of all the members of such local legislative or governing body shall be required to reverse any order, requirement, decision or determination of any such administrative official or to decide in favor of the applicant on any matter upon which it is

required to pass, under any such ordinance or resolution, or to effect any variation or special exception to the terms thereof.

"The appeals provided for in this section may be taken by any person aggrieved, or by any officer, department, board or bureau of the county or municipality affected by any decision of any administrative officer, commission or committee in the enforcement of this act or any ordinance, resolution, rule or regulation adopted pursuant to same. * * * The local legislative or governing body shall provide by resolution the procedure to be followed in connection with the appeals provided for in this section.

"14–28–16. Petition for court review —Time limit—Certiorari—Restraining order — Return — Hearing — Reference — Costs — Precedence. — Any person or persons, jointly or severally, aggrieved by any decision of the county or local legislative or governing body, when sitting for the purpose of hearing and deciding appeals, or when sitting with original jurisdiction as the zoning commission, or any taxpayer or any officer, department, board or bureau of a county or municipality, may present to a court of competent jurisdiction a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. * * *

"Upon presentation of such petition, the court may allow a writ of certiorari directed to the local legislative or governing body of such county or municipality, to review its decision * * *.

\* \* \* \* \* \*

"If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or in part, or may modify the decision brought up for review. * * *"

These two sections, although slightly amended by the session laws of 1959, were considered by us in Snow v. City of Albuquerque, 1958, 65 N.M. 133, 333 P.2d 877, which is heavily relied upon by appellants as being determinative. However, the decision in Snow is readily distinguishable from the instant case. In Snow, the owner of certain property had petitioned for a rezoning. The application was referred to the planning commission, at which time

Snow and others protested the re-zoning, at a public hearing. Thereafter, the planning commission recommended to the city commission that the re-zoning be granted. Subsequently, the city commission held an additional hearing, at which time Snow and others again protested. The city commission then enacted the questioned ordinance, and the protestants attempted to proceed by certiorari to question its enactment.

The gist of the Snow decision is to the effect that the statutory writ of certiorari is available only when (1) the governing body is sitting for the purpose of hearing and deciding appeals, and (2) when the commission itself is exercising original jurisdiction as a zoning commission. It is patent from reading the decision that the city commission was not itself exercising original jurisdiction, and that therefore the only ground upon which the protestants there could rely on certiorari was if the city commission had been sitting for the purpose of hearing and deciding an appeal. In that case, there was no appeal taken to the city commission. Apparently, the parties protesting merely appeared and made their subsequent protest when the matter was taken up on the city commission's agenda. This court held, therefore, that, absent any appeal, the protestants had no statutory right of review by certiorari.

It is difficult to imagine what could be the purpose of the enactment of the above statute, if it were not designed to grant a remedy in a situation such as here present. Were it otherwise, the statute would be meaningless, because, as construed by the city, the writ of certiorari would probably never lie. Certainly, it would not be sought by any successful applicant for a zone change; therefore, to give the statute a reasonable meaning, it must of necessity apply to the facts here. To hold that the action taken by the zoning commission in this case was neither an "order, requirement, decision or determination" would be to place a strained construction on the common meaning of the words. We realize that in Snow it was said that the action of the zoning commission was a "mere recommendation," but under the very provisions of § 14–28–15, supra, relating to the voting requirements to reverse the action of the commission, it is much more analogous to a "decision" than a mere report of a committee. It is also to be observed that that portion of § 14–28–15, supra, which grants to the governing body the right to "reverse or affirm, wholly or partly, or * * * modify, the order, requirement, decision or determination," seems to us to convey the meaning that it was the legislative intent to give the action of the zoning commission more than mere recommendatory effect. The Snow decision, as stated, rested on the failure to appeal, and any language used therein to the effect that the zoning commission's "recommendation"

was not a decision or determination as the words are used in the statute was dicta, unnecessary for that decision, and is overruled. We are of the opinion, therefore, that the court action taken here was to review the action of the city commission sitting for the purpose of hearing and deciding appeals and is permitted under § 14–28–16, supra.

The city claims, however, that appellees should have no right to contest the ordinance unless charged with or threatened with a charge of violation of the zoning ordinance. We cannot agree. It is not a question of the court's requiring the municipal governing authority to enact an ordinance; it is only giving a title to a proceeding, i. e., certiorari, in order to vest the court with jurisdiction to pass upon the legality or illegality of the action of the municipal body. Although there might be other remedies, the legislative determination that certiorari be made available is an express grant of a means allowing appellees to enforce a constitutional right of due process. Were it otherwise, the failure of the city to amend a zoning plan might be, with the passage of time, totally destructive of an owner's rights in property. Cf. Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; Henle v. City of Euclid, 1954, 97 Ohio App. 258, 125 N.E.2d 355; Tollius v. City of Miami, (Fla.1957), 96 So.2d 122.

We realize that there are decisions from other jurisdictions cited by appellant which, under the statutes there existing, resulted in a much more restricted view of the statutory right of certiorari than we herein express. However, none of the statutes considered contain identical language to that existing in our law, and therefore appellants' reliance on decisions from other jurisdictions is of no avail. One of the basic rules of statutory construction requires that we give full effect to all of the language used by the legislature in enacting a statute. 2 Sutherland, Statutory Construction, 3d ed. 1943, 394, § 4908. As we view the entire act, our legislature did not intend that the common law restrictions on the use of certiorari remain. Were it otherwise, there would be no reason for the choice of the broad language quoted. We hold, therefore, that the writ of certiorari as provided in the statute is available under the present circumstances. Any other result would effectively nullify the right expressly granted by § 14–28–16, supra.

The trial court's assumption of jurisdiction upon appellees' application for writ of certiorari was therefore without error. The city having taken an appeal on this point only, the judgment will be affirmed. It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.